Filed 2/6/23  P. Vidor CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW VIDOR,<br><br>　　　Defendant and Appellant. | A163804<br><br>(Sonoma County<br>Super. Ct. No. SCR-668037-1) |

　　　This is the third appeal in this matter following appellant Matthew Vidor's convictions for carjacking and two related offenses which resulted in a prison sentence of 10 years and eight months. On remand from this court following the second appeal, the trial court found appellant ineligible for mental health diversion (Pen. Code, § 1001.36)[1] after concluding that his mental illness was not a significant factor in his criminal behavior. On appeal, appellant contends the court abused its discretion in denying his request for diversion. We affirm.[2]

---

　　　[1] All undesignated statutory references are to the Penal Code.

　　　[2] On February 4, 2022, we granted appellant's request for judicial notice of the record in his appeal from the original judgment. (*People v. Vidor* (September 27, 2018, A152527) [nonpub. opn.] (*Vidor I*); Evid. Code, §§ 452, subd. (d), 459; Cal. Rules of Court, rule 8.1115(b)(1).)  We derive much of the factual and procedural background from that case as well as from our opinion

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2015, appellant was charged with carjacking (§ 215, subd. (a)), count 1), fleeing a pursuing police vehicle while driving recklessly (Veh. Code, § 2800.2, count 2), and elder abuse (§ 368, subd. (b)(1), count 3). The complaint further alleged that count 1 was a serious and violent felony pursuant to section 667.9, subdivision (a) because the victim was elderly. (*Vidor II*, *supra*, A156690.)

Early in the proceedings, the trial court appointed psychiatrist Dr. Donald Apostle to evaluate appellant's mental competency. Dr. Apostle determined that appellant was not mentally competent to stand trial. (*Vidor I*, *supra*, A152527.) Proceedings were suspended from August 5, 2015 to December 11, 2015, while appellant was restored to competency. He ultimately entered an open plea to all charges in March 2016. (*Vidor II*, *supra*, A156690.)

On July 19, 2016, the trial court imposed and suspended a sentence of 10 years, eight months and placed appellant on formal probation for four years on the condition that he serve one year in county jail and enter the Jericho Project drug and alcohol treatment program (Jericho). The court awarded 349 days actual credit plus 348 days conduct credit plus 35 hospital days for a total of 732 presentence custody credits. (*Vidor II*, *supra*, A156690.)

On August 28, 2016, nine days after his admission, appellant was discharged from Jericho, reportedly due to his negative attitude and behavior and his failure to respond adequately to treatment. He did not contact the

in the second appeal, *People v. Vidor* (Dec. 3, 2020, A156690) [nonpub. opn.] (*Vidor II*).

probation department and report his discharge, even though he had been instructed to do so. On September 2, 2016, the Sonoma County trial court summarily revoked his probation and issued a warrant for his arrest. After serving 251 days in custody in San Francisco County jail on an unrelated probation violation, appellant was returned to Sonoma County on May 30, 2017. Appellant admitted his probation violation in this matter on July 17, 2017. On September 19, 2017, the trial court terminated appellant's probation as unsuccessful and executed the previously imposed sentence of 10 years, eight months. (*Vidor II*, *supra*, A156690.) He timely appealed.

After appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, we affirmed appellant's conviction in an unpublished opinion filed on September 27, 2018, but remanded the case to allow "the trial court to properly consider the custody credits appellant is entitled to in the case." (*Vidor I*, *supra*, A152527.) After the trial court declined to adjust the custody credits, appellant again appealed. While we agreed with the trial court's ruling on credits, we conditionally reversed appellant's conviction and directed the court to conduct a hearing on his suitability for mental health diversion under section 1001.36. (*Vidor II, supra*, A156690.)

On August 27, 2021, appellant filed a motion seeking mental health diversion. Following argument at a hearing conducted on October 21, 2021, the trial court denied the motion, concluding that appellant's mental health disorder was not a significant factor in the commission of the charged offenses. Appellant timely appealed and requested a certificate of probable cause, which was granted on October 26, 2021.

## II. DISCUSSION

In *People v. Moine* (2021) 62 Cal.App.5th 440, 448, the Court of Appeal concluded that the abuse of discretion standard of review applies "on appeal

3

from a trial court's denial of mental health diversion."  Appellant contends the trial court abused its discretion in finding him ineligible for section 1001.36 mental health diversion.  We are not persuaded.

## A.  Additional Background

As noted above, in July 2015 the trial court appointed Dr. Apostle to evaluate appellant's competency to stand trial.[3]  (*Vidor I*, *supra*, A152527.).  In a report dated July 31, 2015, Dr. Apostle determined that appellant was incompetent.  The doctor indicated that appellant had experienced "delusions of grandeur" and had been diagnosed with possible bipolar disorder when he was 18 or 19.  He had been prescribed lithium, which did not help.  He began using marijuana in the seventh grade, had used methamphetamine consistently for the last five years, and had abused a variety of other drugs, including LSD, mushrooms, Ecstasy, and MDMA.  Dr. Apostle noted that appellant was thought to have a diagnosis of polysubstance dependence with psychosis, as well as possible post-traumatic stress disorder.  Appellant had recently become "increasingly delusional and fascinated with taking cars," which he had done three times since December 2014.  In concluding that appellant was incompetent, the doctor noted that "[t]here may be an underlying major mental health diagnosis but he needs to be off illicit drugs before that can definitively be stated."  Based on the report, the trial court suspended criminal proceedings in August 2015.  (*Vidor II*, *supra*, A156690.) The following month, after defense counsel indicated a possible restoration of competency, the court re-appointed Dr. Apostle.  The doctor re-evaluated

---

[3] This report and all but one of the reports discussed below were submitted as exhibits to appellant's motion for mental health diversion.

4

appellant and concluded that while he showed improvement, he was still incompetent to stand trial and should be placed in a hospital setting.

An October 2015 report prepared by a hospital interdisciplinary treatment team pursuant to section 1370[4] further confirmed appellant's incompetency to stand trial. However, the report noted that although he had not been prescribed any antipsychotic medication, appellant showed no apparent delusions and was fully oriented. He was diagnosed as having severe amphetamine-type substance use disorder, severe alcohol use disorder, and moderate cannabis use disorder. The report concluded that appellant "probably might have had a drug induced psychosis," based on his significant history of substance abuse.

On November 25, 2015, the hospital's medical director submitted a certification of mental competency. In an accompanying report, the hospital's treatment team noted that appellant's symptoms—primarily paranoid delusions—had improved despite him not being on psychotropic medications.[5] Appellant also was "not showing obvious symptomatology for psychopharmacological therapy." The trial court determined appellant was competent, and criminal proceedings were reinstated on December 11, 2015. (*Vidor 1*, *supra*, A152257.)

More recently, in 2021, prison psychologists reported that appellant had been exhibiting symptoms of mania and "unusual/erratic behavior." In February 2021, he was "floridly psychotic" and was "highly suspected of being psychotic due to drug use." He also had been written up for refusing urine

---

[4] Section 1370 sets forth the required procedure for transferring defendants who have been found mentally incompetent to stand trial to the State Department of State Hospitals for treatment.

[5] It appears that this report was not submitted with appellant's motion.

testing in the past. In July 2021, he again exhibited manic-like symptoms and was suspected of ongoing drug use, although it was unlikely that he had obtained drugs because he was in administrative segregation. The psychologist opined that appellant likely suffered from an underlying bipolar disorder with psychotic features that may have contributed to his self-medicating behavior in the community.

In denying appellant's motion for mental health diversion, the trial court noted that Dr. Apostle had determined in 2015 that appellant may have an underlying mental health diagnosis, but that he needed to be off of illicit drugs before a diagnosis could be definitively determined. This suggested to the court that "the use of controlled substances was clearly a substantial factor in [appellant's] behavior as would appear to be the case in the underlying incident." The hospital team's 2015 section 1370 report also indicated that appellant might have experienced a drug-induced psychosis, but he was not then exhibiting any psychotic or mood symptoms, reinforcing the court's view that appellant's use of controlled substances was a substantial contributor to his criminal behavior. As to the more recent reports from the prison psychologist, the court found it was not inconsistent with the prior conclusions reached in the 2015 reports, namely, that appellant's criminal behavior was the result of methamphetamine usage.

## B.    Applicable Legal Principles

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .' " (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

6

"[S]ection 1001.36 applies retroactively to all cases not yet final on appeal." (*Frahs,* at p. 632.)

"[A] trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*Frahs, supra,* 9 Cal.5th at pp. 626–627.) "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion." (*Id.* at p. 627.) " 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' " (*Ibid*.)

"Ultimately, however, diversion under section 1001.36 is discretionary, not mandatory, even if all the requirements are met. [Citations.] We therefore review for abuse of discretion the trial court's decision whether to grant a request for mental health diversion. [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v.*

7

*Gerson* (2022) 80 Cal.App.5th 1067, 1080.) " 'It is [defendant's] burden on appeal to establish an abuse of discretion and prejudice.' " (*People v. Pacheco* (2002) 75 Cal.App.5th 207, 213.)

**C.    Analysis**

Appellant first contends that the trial court's denial of his motion for mental health diversion runs afoul of section 1001.36.  Specifically, he asserts that the court's determination that he was ineligible for diversion due to his drug use is contrary to statute, relying on *Negron v. Superior Court* (2021) 70 Cal.App.5th 1007, 1016–1018 (*Negron*).  *Negron*, however, is inapposite.

In *that case*, the trial court ruled that the defendant was statutorily ineligible for mental health diversion under section 1001.36 because, while the court found he suffered from several qualifying mental health disorders, he also suffered from antisocial personality disorder, a mental disorder that is expressly excluded under section 1001.36, subdivision (b)(1)(A).[6]  (*Negron, supra,* 70 Cal.App.5th 1007 at pp. 1011–1013.)  The central question on appeal was whether a defendant suffering from an excluded mental health disorder is statutorily ineligible for mental health diversion where he or she also suffers from a qualifying mental disorder.  (*Id.* at p. 1009.)  The Attorney General joined the defendant in urging the court of appeal to vacate the denial and order a new hearing.  (*Id.* at p. 1013–1014.)  The appellate court concurred, concluding that section 1001.36, subdivision (b)(1)(A)

---

[6] Section 1001.36, subdivision (b)(1)(A) provides that diversion may be granted if "the court is satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, *but excluding* antisocial personality disorder, borderline personality disorder, and pedophilia. . . ." (Italics added.)

8

unambiguously requires a defendant to establish that he or she suffers from a qualifying mental disorder, while also providing a list of excluded disorders. (*Id*. at p. 1017.) The court ruled that a defendant with multiple disorders, including an excluded disorder, is not necessarily ineligible for relief: "Listing included and excluded disorders in this format simply articulates which disorders may and may not serve to prove the defendant has at least *one* qualifying mental disorder." (*Ibid*.)

In the present case, the trial court did not rule that appellant was ineligible for mental health diversion because he had a diagnosis that is excluded under 1001.36, subdivision (b)(1)(A). Rather, the court ruled he was ineligible for diversion under 1001.36, subdivision (b)(1)(B) because he failed to demonstrate that at or near the time of the offenses he had a qualifying disorder that significantly contributed to his criminal behavior. *Negron* is therefore inapplicable to appellant's circumstances, and he has thus failed to demonstrate that the trial court's decision was contrary to statute.

Appellant next contends that the trial court's decision was not supported by substantial evidence. Again, we disagree. "To grant pretrial diversion, the court must be 'satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense.' (§ 1001.36, subd. (b)(1)(B).) In this regard, the court must conclude 'that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense.' (*Ibid*.)" (*People v. Oneal* (2021) 64 Cal.App.5th 581, 592 (*Oneal*).) "[W]hen determining whether a defendant's mental disorder was a significant factor in the commission of the charged offense for purposes of mental health diversion, section 1001.36 broadly permits the trial court to consider 'any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts,

9

witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense.' [Citation.]" (*Oneal, supra,* at p. 591, italics omitted.)

*Oneal, supra,* 64 Cal.App.5th 581, is instructive. In *Oneal,* the reviewing court found that the lower court did not abuse its discretion when it denied diversion after concluding that the defendant's mental illness was not a significant factor in his criminal behavior. (*Oneal, supra,* 64 Cal.App.5th 581 at p. 585.) In that case, the prosecution's two experts opined that the defendant's psychotic or schizoaffective disorder "was not responsible for, or a motivating factor in," the defendant's commission of the offenses. (*Id.* at p. 592.) In contrast, the defendant's expert opined that defendant's schizoaffective disorder " 'played a significant role in the commission of the charged offenses,' " appearing to rely on testimony from the preliminary hearing indicating that the defendant had a " 'blank look' " or " 'stare' " when he committed the offenses. (*Ibid.*) Unlike the prosecution's experts, the defendant's expert "did not engage defendant in a clinical interview or address the role of defendant's substance use in his criminal behavior." (*Ibid.*) The appellate court upheld the trial court's decision, observing that "[u]ltimately, it was for the trial court to resolve this conflict in the evidence." (*Id.* at p. 593)

The record here contains substantial evidence to support the trial court's conclusion that mental illness did not play a significant role in appellant's commission of the underlying offenses. As noted above, the court considered multiple reports dating from July 2015 to August 2021. The reports from 2015 were made in connection with competency proceedings.

10

Both the July 2015 report of Dr. Apostle and the October 2015 section 1370 report prepared by the hospital treatment team suggested that methamphetamine use was the primary factor in appellant's conduct. Those reports were written relatively close in time to when the offenses were committed. And the hospital team report indicated that his psychotic symptoms had improved since his arrest, even though he was *not* currently taking psychotropic medications. The trial court thus had significant evidence before it tending to show that appellant behaved criminally when he was using illicit drugs, and that he acted appropriately when he was not taking illicit drugs.

Appellant's argument relies heavily on the information and opinions supplied in the 2021 prison psychologists' reports. However, the trial court reasonably determined that even if appellant likely had a bipolar disorder that may have contributed to his drug use, this did not alter the fact that a drug-induced psychosis was deemed to be the primary driver behind the underlying offenses. Moreover, as the *Oneal* court recognized, it was up to the trial court to resolve the conflicts in the evidence. (*Oneal, supra,* at p. 593.) As a court of review, it is not within our province to reweigh the evidence.

Appellant finally contends that even if the trial court's conclusions were supported by substantial evidence, the decision to deny diversion was an abuse of discretion. He argues that "the court abused its discretion by excluding an individual from treatment who has been suffering from mental disorders for years, whether exacerbated by drug use or not." While it does appear that appellant has a mental health disorder, it does not necessarily follow that the disorder significantly contributed to the commission of the underlying offenses, particularly given his long history of chronic

11

methamphetamine use and the relatively rapid decrease in his delusional symptoms without the use of psychotropic medications following his arrest and incarceration.  In sum, the court's denial of appellant's motion for mental health diversion was a proper exercise of its discretion.

## III.  DISPOSITION

The order denying appellant's request for mental health diversion is affirmed.

DEVINE, J.*

WE CONCUR:


MARGULIES, ACTING P.J.


BANKE, J.


A163804N

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.